NEELD CONSTRUCTION COMPANY ET AL. *v.* HARRY MASON.
[No. 42, April Term, 1929.]

*Decided June 25th, 1929.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*Roszel C. Thompsen,* with whom were *Walter L. Clark* and *Joshua Clayton* on the brief, for the appellants.

*A. Freeborn Brown,* for the appellee.

Urner, J., delivered the opinion of the Court.

While performing his duties as a carpenter, employed by the appellant contractor in the construction of a bridge, the appellee was injured by a piece of granite projected by a blasting operation near the place where he was at work. The fragment of rock, weighing ten or fifteen pounds, struck the appellee as he raised his left arm to protect his body from the missile. The bones of the lower arm were fractured, his breast and abdomen were contused, and he was rendered unconscious by the force of the impact. His claim under the Workmen's Compensation Act was sustained by the State Industrial Accident Commission to the extent of an award of compensation for temporary total disability to March 1st, 1928, and for permanent partial disability since that date, during a period of one hundred and twelve weeks, for the loss of three-fourths of the use of his arm. Because the award did not recognize the claim that there was a permanent total loss of the use of his arm as a result of the accident, and a temporary total disability caused by an injury to his heart from the blow which he received, the claimant appealed to the court below, where, after a trial on issues, the order of the commission was affirmed as to the award of compensation for permanent partial disability of the arm, and its finding against the claim for injury to the heart was reversed and the case therefore remanded for the allowance of further compensation. From the judgment of the circuit court to that effect the employer and insurer have appealed.

The principal question to be decided is raised by an exception taken because of the court's refusal to direct the jury to render a negative answer on the issue as to whether the acci-

dent caused an injury to the claimant's heart which reduced him to a state of temporary total disability. An instruction to that end was requested on the ground that according to all of the medical witnesses the heart disease with which the claimant was suffering at the time of the trial did not result from the accident. It was undisputed, however, that it developed after that occurrence. The claimant, after describing how he was struck by the piece of granite, testified, in part, as follows: "I did not know anything after it hit me. When I came to, I was in the hospital at Havre de Grace, Md. I had no doctor myself. Dr. Charles Foley attended me while I was in the hospital. He was representing the insurance company. I came to some time in the afternoon. When I came to they had ice on my chest and I was propped up in bed with a back rest of pillows. I could hardly get my breath. I went to the hospital the 29th day of August, and I believe it was the second Monday in January I came out. They set my arm, put it in boards, or splints, I guess that is the medical way of expressing it. It was in splints from the 29th day of August until the 14th day of November when they had taken them off and operated on me. * * * After I got out of the hospital I did not go to work. I could scarcely walk along the street. My heart condition was such that the least little exertion is too much. I can't go far at a time, I get out of breath. My physical condition today is no better than it was March 1st last. When walking I get pains in my breast; if I walk as fast as an ordinary man should walk I get short of breath and get severe pains around my heart and in that side (indicating). I never did have any trouble at all with my heart before the accident. I never had any heart murmur or any heart leakage or anything to disturb me in my work."

There was confirmatory testimony as to the claimant's health and strength before the accident and as to his subsequent incapacity due to the impaired condition of his heart. Dr. Foley, who first attended him, testified that he had a "systolic murmur at the apex of the heart," which is "known as valvular heart trouble." He said "It's not organic and it's not traumatic. Infection would produce it. Infection could

574

be produced by the tonsils, teeth, rheumatism or any old process a person may have in the past. I took the history of the patient when he came in. There was no evidence of any rheumatism and no history of having had anything in the past. He was in the hospital twenty-one weeks on account of his arm. He didn't have a union. He had to have the arm plated, and following that he had a mild amount of infection." In the further course of his testimony Dr. Foley stated that the systolic murmur did not exist at the time of the accident and was not caused by the injury then received.

Dr. Steiner testified that the claimant had "a large mitral leak in his heart," for which the witness prescribed the usual remedies, but the patient had not responded materially to the treatment, and if "he were to attempt to do any physical work, it would probably bring on what we call broken compensation; the heart wouldn't be able to keep up circulation, he would become dropsical, swollen and bedridden." When asked to consider that the claimant was well to the time of the accident, and then to state the cause of his subsequent heart condition, the witness replied: "That particular heart lesion is usually due, as far as I know, attributable to some infection somewhere." Another physician, Dr. Stein, who examined the claimant, testified that he had a heart murmur, but that it must have resulted from some other cause than the described external injury. An opinion to the same effect was expressed by Dr. Reifschneider, upon the basis of the testimony as to the claimant's heart condition.

Apart from the opinions of the medical experts, the evidence was clearly sufficient to require the submission to the jury of the issue as to the injurious effect upon the claimant's heart of the blow inflicted upon his body in the region of that organ. The weight of the stone, the force of the explosion by which it was hurled, the unconsciousness and subsequent suffering caused by the violence of the impact, would naturally suggest the possibility of injury more deep-seated than the contusions of the chest wall and abdomen described in the testimony. It is a very significant fact, according to the evidence, that the claimant had a sound

heart and vigorous health to the time of the accident, but is now an invalid because of a heart condition discovered during the period of the hospital treatment of his injuries. The view that the trouble with his heart was not caused by the blow, but probably by some infection, is inconclusive upon the question which we have now to decide. The evidence tends to exclude any other source of infection than that which developed in the claimant's injured arm. While a systolic murmur of his heart had been noticed before the infection originated, as Dr. Foley testified, yet the arm infection existed before the more serious symptoms of the heart irregularity were manifested. There is a reasonable basis for the inference of a causal relation between the accidental injury received by the complainant in the course of his employment and the ensuing condition of his heart, by which his ability to work has been impaired. *Dickson Co. v. Beasley,* 146 Md. 568; *Bramble v. Shields,* 146 Md. 494; *Kaufman Construction Co. v. Griffith,* 154 Md. 55; *Armour Fertilizer Co. v. Thomas,* 153 Md. 631. The refusal to withdraw the issue from the jury was correct.

The employer and insurer objected to the granting of the issue, as proposed by the claimant, in regard to the effect of the accident upon his heart, and one of their exceptions was reserved because of that ruling. As the specific inquiry involved in the issue was material to the ultimate determination of the case, we think it was properly granted. *Schiller v. Balto. & O. R. Co.,* 137 Md. 256; *Owners' Realty Co. v. Bailey,* 153 Md. 274; *Armour Fertilizer Co. v. Thomas, supra.*

The propriety of another submitted issue was questioned by the employer and insurer, but they were apparently not prejudiced by the ruling on that objection.

*Judgment affirmed with costs.*